IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN HARRIS,<br><br>                Plaintiff,<br><br>v.<br><br>PURGATORY CORRECTIONAL FACILITY, WASHINGTON COUNTY SHERIFF'S OFFICE, KYLE BIGELOW, GARRETT MCKEAN, SERGEANT CROWTHER, DEPUTY LARSEN, DEPUTY LUBITZ J. ANDERSON, DEPUTY JACOBS, JOHN DOES 1-10, JANE DOES 1-10, PURGATORY CORRECTIONAL FACILITY WARDEN,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTIONS TO AMEND AND SUPPLEMENT<br><br>Case No. 4:25-cv-00018-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Paul Koher |

        This matter is before the Court on Plaintiff's Motion to Amend[1] and Motion to Supplement.[2] For the reasons discussed below, both Motions are granted, which renders moot Defendants' Motion for Judgment on the Pleadings.[3]

        Plaintiff seeks to amend his Complaint and supplement the record. Unless able to amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[4] "The court should freely give leave when justice so requires."[5] "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory

---

[1] Docket No. 47, filed September 19, 2025.

[2] Docket No. 48, filed September 19, 2025.

[3] Docket No. 42, filed August 19, 2025.

[4] Fed. R. Civ. P. 15(a)(2).

[5] *Id.*

1

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"[6] "A general presumption exists in favor of allowing a party to amend its pleadings, and the non-moving party bears the burden of showing that the proposed amendment is improper."[7]

Defendants argue that Plaintiff's Motion should be denied because it is futile. Defendants argue that the exhibits attached to the proposed Amended Complaint demonstrate that he was arrested for a felony, while Plaintiff's Fourth Amendment claim is based on his assertion that Plaintiff was only arrested on misdemeanor charges.

The record is not as clear as either party suggests. The statute in effect at the time of the arrest contained penalties for both felonies and misdemeanors.[8] And there is conflicting evidence in the record as to whether Plaintiff was arrested for a felony or misdemeanor. For example, while certain documents state the severity of an "F2" or "2F"—presumably a second degree felony—the actual statutory citation provided in those same documents refers to a provision of the statute—Utah Code Ann. § 76-10-2402(1)(a)—that calls for only a misdemeanor penalty.[9] The fact that Plaintiff was ultimately charged with a misdemeanor under § 76-10-2402(1)(a)[10]

---

[6] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[7] *Carrazco v. Morrison*, No. 21-cv-01277-NYW, 2022 WL 2666031, at *2 (D. Colo. July 11, 2022) (citing *Foman*, 371 U.S. at 182 and *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv. Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999)).

[8] Utah Code Ann. § 76-10-2402. The statue has since been amended and renumbered. Misdemeanor commercial obstruction is found in Utah Code Ann. § 76-9-113. Felony aggravated commercial obstruction is contained in Utah Code Ann. § 76-9-114.

[9] Docket No. 47-2, at 1, 2, and 6.

[10] Docket No. 1-1, at 1.

provides further support for Plaintiff's claim that he was arrested for a misdemeanor. Thus, contrary to Defendants' argument, Plaintiff has not invalidated his claim based on his filing. Instead, Plaintiff's proposed amendments present a factual dispute that cannot be resolved on a Motion to Amend. Moreover, the fact that Plaintiff has attached certain documents to his Complaint and proposed Amended Complaint does not mean that Plaintiff has expressly adopted the statements within those documents as being true.[11] Thus, the Court need not accept the statements contained in the attached documents as true.

---

[11] *Mundt v. Gadziala*, No. 24-1041, 2024 WL 5087212, at *5 (10th Cir. Dec. 12, 2024) (unpublished) (stating that "before treating the content of any documents as true, the district court should have considered the nature of those documents and why the complaint referenced them"); *Hymer v. Kross*, No. 23-2374, 2024 WL 3026781, at *2 (3d Cir. June 17, 2024) (unpublished) ("While courts may consider exhibits attached to a complaint when considering whether dismissal is appropriate, a plaintiff does not automatically incorporate into her complaint every fact asserted in such attachments. Moreover, facts asserted in such attachments may not necessarily be considered for the truth of the matter asserted."); *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) (stating that material attached to a complaint may not "be viewed for the truth of the matters asserted" therein); *Goines v. Valley Comty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016) ("[I]n cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true. For example, if a prisoner attaches an unfavorable decision from a prison tribunal to show that he has exhausted his administrative remedies, he does not thereby adopt the factual findings of that unfavorable decision."); *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("Rule 10(c) does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact.") (internal quotation marks and citation omitted); *Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004) (rejecting as "fantastic" the argument that "all facts contained in any attachments to a complaint are automatically deemed facts alleged as part of the complaint"); *Guzell v. Hiller*, 223 F.3d 518, 519 (7th Cir. 2000) ("A plaintiff in a libel suit who attached the allegedly libelous article to his complaint would obviously not be vouching for the truth of the libelous assertions in the article. The plaintiff's purpose in attaching an exhibit to his complaint determines what assertions if any in the exhibit are facts that the plaintiff has incorporated into the complaint.") (internal citation omitted); *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 456 (7th Cir. 1998) ("To require district courts to accept unilateral statements in documents written by a defendant as true simply because they were

Defendants make further futility arguments related to qualified immunity and municipal liability. The Court agrees that Plaintiffs' proposed amendments contain flaws that must be addressed, as will be discussed below. However, allowing Plaintiff to amend to address these deficiencies is consistent with the spirit of Rule 15.[12]

Defendants next argue they will be prejudiced by amendment. The most important "factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party."[13] "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment. Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."[14]

Defendants' primary prejudice argument relates back to their previous assertion that Plaintiff's claim is not based on law or fact. As discussed, the Court disagrees with Defendants' assessment. Further, even if the Court did agree, this argument only relates to one of Plaintiff's claims. Plaintiff's initial Complaint and proposed Amendments are based on more than his Fourth Amendment claim. As such, it does not provide a basis for denial.

---

attached as exhibits to a plaintiff's complaint would be contrary to the concept of notice pleading. It would enable parties to hide behind untested, self-serving assertions.").

[12] *Foman*, 371 U.S. at 182 ("Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.").

[13] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).

[14] *Id.* at 1208 (internal quotation marks and citation omitted).

Defendants also claim that Plaintiff's claim is futile because collection of DNA during a regular booking process is lawful. However, Plaintiff has presented a non-frivolous argument that *Maryland v. King* is limited to routine booking procedures for serious offenses,[15] and that the crime at issue here—potentially a misdemeanor—does not constitute a serious offense that would permit such collection. A motion to amend is the proper vehicle to address these complicated questions.

Defendants also argue that Plaintiff's Motion should be denied because of undue delay. Undue delay is a potential reason to not permit amendment. Denial may be appropriate "when the party filing the motion has no adequate explanation for the delay."[16] Further, "[t]he longer the delay, 'the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'"[17] However, "[l]ateness does not of itself justify the denial of the amendment."[18] Instead, the Tenth Circuit "focuses primarily on the reasons for the delay."[19]

Here, Plaintiff has provided an adequate explanation. Plaintiff explains that recently produced discovery has allowed him to identify the officers who allegedly participated in the

---

[15] *Maryland v. King*, 569 U.S. 435, 465–66 (2013) ("When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.").

[16] *Frank v. U.S. West*, 3 F.3d 1357, 1365–66 (10th Cir. 1993).

[17] *Minter*, 451 F.3d at 1205 (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

[18] *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975).

[19] *Minter*, 451 F.3d at 1206.

conduct that makes up his claims. The parties only recently exchanged initial disclosures.[20] Plaintiff's Motion was filed soon thereafter. While Defendants argue that the reports and identities in the produced materials were previously available, they provide nothing to suggest that Plaintiff was in possession of these materials prior to their disclosure.

Finally, Defendants oppose Plaintiff's Motion to Supplement wherein Plaintiff seeks to supplement the record with a copy of a state agency records denial letter. Defendants argue that the Motion should be stricken. But, as the Court has previously explained, "there is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda."[21] While Defendants contend that the letter adds nothing, it does provide proof of Plaintiff's attempts to learn the identities of the officers involved in the alleged incident, which provides further justification to allow amendment.

Considering the relevant factors, the Court finds that Plaintiff's Motion to Amend and Motion to Supplement should be granted. However, Plaintiff's proposed amendments suffer from the following deficiencies that should be addressed:

**1. The Complaint improperly asserts claims against entities and people who are not persons under 42 U.S.C. § 1983.**

Plaintiff's Complaint lists the Purgatory Correctional Facility and the Washington County Sheriff's Office as Defendants. A claim under § 1983 may be brought against persons acting

---

[20] Docket No. 41 ¶ 1(c).

[21] Docket No. 38, at 2–3 (quoting *Searcy v. Soc. Sec. Admin.*, 956 F.2d 278, at *2 (10th Cir. 1992) (unpublished table decision)).

under color of state law. The Purgatory Correctional Facility and Washington County Sheriff's Office are not persons under § 1983.[22] Therefore, they are not subject to suit.

Additionally, Plaintiff names the Warden of the Purgatory Correctional Facility. Defendants contend that no such person exists. Plaintiff should verify the identity of the individual he seeks to name as a Defendant.

**2. The Complaint improperly asserts a claim under § 1983 based on an alleged violation of state law.**

Plaintiff's Complaint asserts that officers violated Utah Code Ann. § 53-10-404 when they collected his DNA sample because he was arrested on a misdemeanor charge. Even assuming that Plaintiff is correct, a violation of state law does not give rise to a claim under § 1983.[23] Therefore, his claim cannot rest solely on Defendants' alleged violations of Utah state law.

**3. The Complaint possibly inappropriately alleges civil-rights violations on a respondeat-superior theory—i.e., supervisory liability.**

---

[22] *See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) ("The 'City of Denver Police Department' is not a separate suable entity."); *Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010) ("Generally, governmental sub-units are not separable suable entities that may be sued under § 1983"); *Aston v. Cunningham*, No. 99-4156, 2000 WL 796086, *4 n.3 (10th Cir. June 21, 2000) (unpublished table decision) (stating that jail would be dismissed "because a detention facility is not a person or legally created entity capable of being sued").

[23] *Jones v. City & Cnty. of Denv. Colo.*, 854 F.2d 1206, 1209 (10th Cir. 1988) ("Section 1983 does not, however, provide a basis for redressing violations of *state* law, but only for those violations of *federal* law done under color of state law.").

Plaintiff may not name individuals as defendants based solely on supervisory position.[24] Plaintiff identifies Kyle Bigelow as the Sheriff and Garret McKean as a supervisor. In order to state a claim under § 1983, a complaint must allege personal participation by the defendant.[25] Such personal participation must be alleged by showing an affirmative link between the defendant and the challenged conduct, either through the defendant's actual conduct or the defendant's acquiescence in a constitutional violation.[26] Thus, a complaint must "make clear exactly *who* is alleged to have done *what* to *whom*."[27] "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim."[28] Therefore, Plaintiff must amend his Complaint to either allege facts establishing personal participation by Defendants Bigelow and McKean, or to remove those Defendants.

**4. The Complaint fails to describe the actions taken by each individual officer.**

Plaintiff lists several officers who were allegedly involved in the subject incident. However, he fails to describe with any particularity as to what these officers did, other than to say that thy were "involved in restraining, assaulting, or otherwise facilitating the forced DNA extraction."[29] Again, a complaint must "make clear exactly *who* is alleged to have done *what* to

---

[24] *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (stating that supervisory status alone does not support § 1983 liability).

[25] *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976).

[26] *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976).

[27] *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

[28] *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)).

[29] Docket No. 47-1, at 2.

*whom.*"[30] Each individual must be named separately with separate constitutional violations identified per individual defendant.[31] Therefore, Plaintiff must amend his Complaint to provide sufficient information to identify the specific actions taken by each of those officers.

**5. The current claims need general clarification.**

In general, each cause of action, with the facts and citations that directly support it, should be stated separately. Plaintiff should be as brief as possible while still using enough words to fully explain the 'who,' 'what,' 'where,' 'when,' and 'why' of each claim.[32] Plaintiff must amend his Complaint to state his claims accordingly. Plaintiff should keep the following in mind in drafting an amended complaint.

Plaintiff attempts to state claims under § 1983 for unlawful search and seizure. The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[33] "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."[34] "A 'seizure' of property occurs when there is some meaningful interference with an individual's

---

[30] *Robbins*, 519 F.3d at 1250.

[31] *Id*. (finding cause of action failed to satisfy the required standard of fair notice due to complaint's failure to isolate the allegedly unconstitutional acts of each defendant).

[32] *Id.* at 1248 ("The *Twombly* Court was particularly critical of complaints that mentioned no specific, time, place, or person involved in the alleged [claim].") (internal quotation marks and citation omitted).

[33] U.S. Const. amend. IV.

[34] *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

possessory interests in that property."[35] "For a search or seizure to be reasonable, it must ordinarily be supported by a warrant based on probable cause,"[36] unless an exception to the warrant requirement applies.[37] Therefore, to state a claim for an unlawful search and seizure, Plaintiff must allege facts plausibly showing that a search and seizure occurred and that they were unreasonable under the circumstances.

While a DNA swab implicates the Fourth Amendment, the Supreme Court has concluded "that DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure," at least for "a serious offense."[38] Any proposed amendment should provide additional factual information that would support his claim that the DNA collection in this case exceeds what the Supreme Court has found permissible.

Next, Plaintiff attempts to state an excessive force claim, asserting that officers slammed him to the ground, choked him, painfully restrained him, and stripped him naked. The Supreme Court has listed non-exclusive factors that may bear on whether an officer's use of force on pretrial detainee was objectively reasonable, including: (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether

---

[35] *Id.*

[36] *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021).

[37] *See Katz v. United States*, 389 U.S. 347, 357 (1967) ("[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.").

[38] *King*, 569 U.S. at 465.

the plaintiff was actively resisting."[39] Plaintiff should address these factors in amending his Complaint.

And, as discussed, Plaintiff should carefully describe the alleged conduct of each Defendant. Generally, in excessive force cases, the Court must conduct an individualized assessment of each officer's participation. However, the Tenth Circuit has recognized some circumstances where officers conduct may be aggregated.[40] Any amendment should make clear whether Plaintiff is attempting to assert such a claim, such as a claim that all officers contributed to the excessive force[41] or they failed to intervene.[42]

Plaintiff also claims a violation of the Fourth and Fourteenth Amendments based on an alleged strip search. "It is axiomatic that a strip search represents a serious intrusion upon personal rights."[43] But if a strip search is reasonably related to a legitimate penological interest, it does not violate the constitution, even if conducted on less than probable cause.[44] To evaluate a

---

[39] *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

[40] *Krueger v. Phillips*, --- F.4th ---, 2025 WL 2424209, at 14 n.16 (10th Cir. Aug. 22, 2025); *Estate of Booker v. Gomez*, 745 F.3d 405, 421–23 (10th Cir. 2014).

[41] *Booker*, 745 F.3d at 422 ("[A] police officer may be responsible for another officer's use of excessive force if the officer . . . actively participated in the use of excessive force.") (internal quotation marks and citation omitted).

[42] *Id.* ("[E]ven if a single deputy's use of force was not excessive, a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983") (internal quotation marks and citation omitted); *Mascorro v. Billings*, 656 F.3d 1198, 1204 n.5 (10th Cir. 2011) ("It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.").

[43] *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993) (internal quotation marks and citation omitted).

[44] *See Bell v. Wolfish*, 441 U.S. 520, 558–60 (1979).

search's reasonableness and balance a prison's significant, legitimate security interests against an inmate's privacy interests, a court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."[45]

Plaintiff's proposed amendments fail to provide information relevant to determining whether he has stated a plausible claim for the alleged strip search. This context matters. "[W]ho conducted [the search] and the way it was conducted" are important considerations in determining whether Plaintiff has stated a claim.[46] For example, if Plaintiff was subjected to a cross-gender strip search, his claim would be viewed differently than if only males were involved.[47] Similarly, the Supreme Court has made clear that abusive searches "cannot be condoned."[48] Thus, further details are required to determine whether Plaintiff has stated a viable claim that could overcome claims of qualified immunity.

**6. The Complaint fails to sufficiently allege *Monell* liability.**

A municipality may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."[49] However, "local governments are responsible only for 'their own illegal acts.'"[50] "They are not

---

[45] *Id.* at 559.

[46] *Griffith v. El Paso Cnty.*, 129 F.4th 790, 826 (10th Cir. 2025).

[47] *See id.* at 827–28; *Hayes v. Marriott*, 70 F.3d 1144, 1146–48 (10th Cir. 1995); *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982).

[48] *Bell*, 441 at 560.

[49] *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

[50] *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

vicariously liable under § 1983 for their employees' actions."[51] In order to state a claim for municipal liability, a plaintiff must allege (1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury alleged; and (3) deliberate indifference on the part of the municipality.[52]

A plaintiff may allege the existence of a municipal policy or custom in the form of (1) an officially promulgated policy; (2) an informal custom amounting to a widespread practice; (3) the decisions of employees with final policymaking authority; (4) the ratification by final policymakers of the decisions of their subordinates; or (5) the failure to adequately train or supervise employees.[53]

Plaintiff's claim for municipal liability appears to be based on either an informal custom or a failure to train. To establish municipal liability under the theory of an informal custom or practice, Plaintiff must demonstrate:

> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by . . . [municipal] employees;
> (2) Deliberate indifference to or tacit approval of such misconduct by the . . . policymaking officials . . . after notice to the officials of that particular misconduct; and
> (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . custom and that the custom was the moving force behind the unconstitutional acts.[54]

---

[51] *Id.*

[52] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013).

[53] *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

[54] *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993).

To establish that an informal custom has become an official policy, Plaintiff must show that it amounts to "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."[55] In other words, "to establish a custom, the actions of the municipal employees must be 'continuing, persistent and widespread.'"[56] "In attempting to prove the existence of such a 'continuing, persistent and widespread' custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way."[57]

Plaintiff alleges that the County had a "systemic misidentification of misdemeanors as felonies."[58] However, he fails to include any factual allegations—such as similarly situated arrestees being identified as felons rather than misdemeanants—to support this conclusory allegation. Further fact-based allegations are required before this claim can proceed.

Turning to the failure-to-train theory, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[59]

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving

---

[55] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (internal quotation marks and citations omitted).

[56] *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (quoting *Gates*, 996 F.2d at 1041).

[57] *Id.*

[58] Docket No. 47-1, at 5.

[59] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.[60]

Here, there are only conclusory allegations, devoid of factual development, that the County had a pattern of tortious conduct. As noted, Plaintiff states that the County had a "systemic misidentification of misdemeanors as felonies,"[61] but fails to provide any factual support for this statement. Thus, Plaintiff has failed to adequately allege that the County had notice that its training was deficient.[62]

The question then becomes whether "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[63] Again, Plaintiff's proposed Complaint has no factual allegations regarding this issue.

It is therefore

ORDERED that Plaintiff's Motion to Amend and Motion to Supplement (Docket Nos. 47 and 48) are GRANTED. Defendants' Motion for Judgment on the Pleadings (Docket No. 42) is MOOT.

---

[60] *Bryson*, 627 F.3d at 789 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998)).

[61] Docket No. 47-1, at 5.

[62] *Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

[63] *City of Canton*, 489 U.S. at 390.

Plaintiff is directed to file his Amended Complaint, in accordance with the instructions set forth above, by November 24, 2025. Plaintiff must cure the Complaint's deficiencies noted above by filing a single document entitled, "Amended Complaint." The Amended Complaint MAY NOT include claims outside or beyond what was already contained in the complaint originally filed here.

DATED this 24th day of October, 2025.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge