IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN MATTHEW HARRIS, <br><br> **Plaintiff,** <br><br> vs. <br><br> **WASHINGTON COUNTY, PURGATORY CORRECTIONAL FACILITY, WASHINGTON COUNTY SHERIFF'S OFFICE, KYLE BIGELOW, GARRET MCKEAN, SGT. LACIE CROWTHER, DEP. KEVIN M. LARSON, DEP. BRICE LUBITZ, DEP. JOHN JACOBS, DEP. LACEY ADAMS, DEP. ANDREW MILLER, DEP. TYLER TAIT, DEP. JAY B. CHADWICK, DEP. CORTNEY CHEEMAN, DEP. BAILEE W. MABE, DEP. KAITLYN JOHNSON, WARDEN, AND OFFICER J. DICKERSON,** <br><br> **Defendants.** | **MEMORANDUM DECISION AND ORDER OVERRULING PLAINTIFF HARRIS'S OBJECTION & ADOPTING JUDGE KOHLER'S REPORT AND RECOMMENDATION** <br><br><br> Case No. 4:25-cv-00018-AMA-PK <br><br> District Judge Ann Marie McIff Allen <br><br> Magistrate Judge Paul Kohler |

Before the Court is Plaintiff Harris's Objection[1] to Magistrate Judge Kohler's Report and Recommendation,[2] which recommends denying Plaintiff's Motion for Partial Summary Judgment[3] and granting Defendant Dickerson's Motion for Summary Judgment.[4] For the reasons

---

[1] ECF No. 138, filed March 26, 2026.
[2] ECF No. 137, filed March 24, 2026.
[3] ECF No. 115.
[4] ECF No. 122.

1

below, Plaintiff Harris's Objection is overruled, and the Court adopts the recommendations made in the Report and Recommendation.

## BACKGROUND

On February 24, 2025, Plaintiff Steven Matthew Harris initiated this action, bringing various § 1983 claims against Purgatory Correctional Facility, Washington County Sheriff's Office, Kyle Bigelow, Garrett McKean, Sergeant Crowther, Deputy Larsen, Deputy Lubitz, J. Anderson, Deputy Jacobs, and Purgatory Correctional Facility (the "Washington County Defendants").[5] On October 24, 2025, the Magistrate Judge granted Plaintiff leave to file an Amended Complaint,[6] which Plaintiff subsequently filed on October 30, 2025.[7] This Amended Complaint added, among others, Officer J. Dickerson of the St. George Police Department as a defendant.[8]

Plaintiff moved for Partial Summary Judgment on January 12, 2026.[9] Defendant Dickerson moved for Summary Judgment on January 26, 2026.[10] On March 24, 2026, Magistrate Judge Kohler issued a Report and Recommendation recommending that Plaintiff's Motion for Partial Summary Judgment be denied and that Defendant Dickerson's Motion for Summary Judgment be granted.[11] Plaintiff objected to the Report and Recommendation on March 26, 2026,[12] within fourteen days of the issuance of the Magistrate Judge's Report and

---

[5] ECF No. 1.
[6] ECF No. 61.
[7] ECF No. 62.
[8] *Id.*
[9] ECF No. 115.
[10] ECF No. 122.
[11] ECF No. 137.
[12] ECF No. 138.

Recommendation.[13] The Washington County Defendants responded to Plaintiff's Objection on April 9, 2026,[14] and Plaintiff replied on April 14, 2026.[15]

No party has objected to the background section set forth in the Magistrate Judge's Report and Recommendation. The Court will, thus, not repeat it here.

## LEGAL STANDARD

"De novo review is required after a party makes timely written objections to a magistrate's report."[16] "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."[17] Specific objections "enable[] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."[18] As Plaintiff's objections were timely filed, the Court thus reviews de novo the objected-to portions of the Report and Recommendation.

With respect to summary judgment, a district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."[19] "In applying this standard, [courts] construe the evidence in the light most favorable to . . . the nonmoving party."[20]

---

[13] *See* Fed. R. Civ. P. 72(b).
[14] ECF No. 139.
[15] ECF No. 143.
[16] *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996); *see* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").
[17] *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).
[18] *Id.* at 1059.
[19] Fed. R. Civ. P. 56(a).
[20] *McBeth v. Himes,* 598 F.3d 708, 715 (10th Cir. 2010).

**DISCUSSION**

Plaintiff makes five objections to the Magistrate Judge's Report and Recommendation: (1) the Report and Recommendation fails to resolve Plaintiff's Motion as filed; (2) the Report and Recommendation's constitutional analysis directly contradicts the Magistrate Judge's own simultaneous factual findings; (3) the Report and Recommendation misapplies *Maryland v. King* by applying its balancing test to a record that lacks the necessary predicate conditions; (4) the Report and Recommendation grants summary judgment to Defendant Dickerson on a theory that does not address Plaintiff's claim; and (5) the Report and Recommendation fails to adjudicate an independent excessive force claim. The Court finds it most expedient to first address the fourth objection. After doing so, it will turn to the remaining objections

**A.    Defendant Dickerson and Probable Cause Supporting the Arrest**

The Magistrate Judge's report recommends granting summary judgment in favor of Defendant Dickerson because probable cause existed to arrest Plaintiff for a misdemeanor offense. While Plaintiff does not appear to dispute that probable cause—at least for a misdemeanor offense—existed, he claims that this fails to resolve his theory of liability for Defendant Dickerson. According to Plaintiff, he does not contest the constitutionality of his arrest but rather argues that Defendant Dickerson's "false felony" designation on the Probable Cause Affidavit and Warrantless Arrest Probable Cause Statement caused the later allegedly unconstitutional search.

It is undisputed that Defendant Dickerson was not present when the DNA sample was extracted. Direct participation is, however, not necessary for liability under § 1983.[21] Rather, "[a]ny official who 'causes' a citizen to be deprived of h[is] constitutional rights can also be held

---

[21] *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990).

liable."[22] "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of h[is] constitutional rights."[23] Although the precise contours of Plaintiff's claims are far from clear, it appears that Plaintiff contends that Defendant Dickerson, while not a direct participant in the search at issue, set that search in motion by including "F2" on the Probable Cause Affidavit and Warrantless Arrest Probable Cause Statement. In other words, Plaintiff contends that Defendant Dickerson included a false statement in the affidavit, which then allegedly led to the violation of Plaintiff's Fourth Amendment rights. As Defendant Dickerson has invoked the defense of qualified immunity, Plaintiff must "show[] that (1) [Defendant Dickerson] violated a constitutional or statutory right which (2) was clearly established at the time of [Defendant Dickerson's] conduct."[24]

"It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit."[25] "If an arrest warrant affidavit contains false statements, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit."[26]

Plaintiff claims that the Magistrate Judge accepted Defendant Dickerson's explanation that the contradictions in the Probable Cause Affidavit and Warrantless Arrest Probable Cause Statement resulted from typographical errors. This misunderstands the Report and Recommendation. There, the Magistrate Judge assumed for purposes of the Motion that the

---

[22] *Id.*
[23] *Id.*
[24] *Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1219 (10th Cir. 2025).
[25] *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996).
[26] *Id.* (citation modified).

"severity of the offense section of the probable cause statement was a false statement."[27] Thus, the Magistrate Judge did not accept Defendant Dickerson's explanation but rather assumed Plaintiff's position.

In reviewing the issue de novo, the Court notes that Plaintiff has offered no evidence placing Defendant Dickerson's explanation in dispute. Defendant Dickerson states in his Declaration that he "arrested Mr. Harris for Commercial Obstruction, U.C.A. § 76-10-2402[,]" which "can be charged as a misdemeanor or a felony."[28] Defendant Dickerson further states that he "intended to charge Mr. Harris with a felony, as shown by the 'F2' designation on my Affidavit of Probable Cause . . . and . . . Warrantless [Arrest] Probable Cause Statement; however; I mistakenly listed Section (1)(a), which is the misdemeanor section of the statute, rather than Section (2)[.]"[29] With this evidence alone, it does not seem that a reasonable jury could find that Defendant Dickerson "knowingly or with reckless disregard for the truth" falsely designated the arresting offense, "Commercial Obstruction," as a felony. Nonetheless, the Court will set aside the statement as if it were false and examine the remaining contents of the affidavit to ascertain whether probable cause existed to support an arrest for felony commercial obstruction. In doing so, the Court does not suggest that Defendant Dickerson's subjective intent is relevant to whether probable cause existed.[30] But if probable cause existed to support an arrest

---

[27] ECF No. 137 at 6.

[28] ECF No. 121, Ex. 4 ¶¶ 5–6.

[29] *Id.* ¶ 7.

[30] An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause . . . The Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (emphasis in original) (citation modified).

for felony commercial obstruction, Defendant Dickerson's explanation would be further supported such that it cannot be said that Defendant Dickerson "knowingly, or with reckless disregard for the truth, include[d] false statements in the affidavit" by designating the arresting offense as a second-degree felony—or "F2."

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."[31] Whether probable cause to arrest exists depends "upon whether, at the moment the arrest was made . . . the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense."[32] "A police officer can base a probable cause determination upon a witness's statement."[33] "Absent special circumstances suggesting that a victim-witness is not credible, corroboration is not essential and a police officer should be permitted to assume he is dealing with a trustworthy person."[34]

Notably, "[a]s the standard itself indicates, *probable* cause does not require metaphysical certitude or proof beyond a reasonable doubt."[35] "Probable cause is a matter of probabilities and common sense conclusions, not certainties."[36] While it requires "more than mere suspicion that unlawful activity is afoot[,]"[37] "[i]t does not . . . require the suspect's guilt to be 'more likely true

---

[31] *Id*. at 152.
[32] *Adams v. Williams*, 407 U.S. 143, 148 (1972) (alterations in original).
[33] *Munday v. Johnson*, 257 F. App'x 126, 131 (10th Cir. 2007) (unpublished).
[34] *Id*.
[35] *United States v. Martin,* 613 F.3d 1295, 1302 (10th Cir. 2010) (emphasis in original).
[36] *Id*. (citation modified).
[37] *Id*.

than false'"[38] nor does it "require the same type of specific evidence of each element of the

offense as would be needed to support a conviction."[39] Moreover, "[b]ecause probable cause is

an objective standard, an arrest is lawful if the officer had probable cause to arrest for any

offense, not just the offense cited at the time of arrest or booking."[40] Ultimately, "[p]robable

cause is not a high bar."[41]

Plaintiff does not contend that the arrest was unlawful in that he does not dispute that

probable cause existed to support an arrest for misdemeanor commercial obstruction. However,

he argues that probable cause did not exist to support an arrest for felony commercial

obstruction. The Court disagrees.

Utah Code Annotated § 76-10-2402(2) (2024) provides in relevant part as follows:

(2) A person is guilty of felony commercial obstruction if the person enters or remains unlawfully on the premises or in a building of any business with the intent to interfere with the employees, customers, personnel, or operations of a business and also with the intent to:
> (a) obtain unauthorized control over any merchandise, property, records, data, or proprietary information of the business;
> (b) alter, eradicate, or remove any merchandise, records, data, or proprietary information of the business;
> (c) damage, deface, or destroy any property on the premises of the business;
> (d) commit an assault on any person; or
> (e) commit any other felony.

(3) A person who violates any provision in Subsection (2) is guilty of a second degree felony.

---

[38] *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).
[39] *Adams*, 407 U.S. at 149.
[40] *D.C. v. Wesby*, 583 U.S. 48, 54 n.2 (2018).
[41] *Id*. at 57 (citation modified).

As relevant here, Defendant Dickerson received information from the convenience store manager, which he then corroborated by viewing video footage of the incident.[42] The information provided that Plaintiff entered the convenience store and, after being unable to purchase tobacco products without identification, became visibly upset and began arguing with the convenience store manager at the cash registers such that he was asked to leave.[43] He refused to do so, continuing to yell and argue with the convenience store employees while a line of people waiting for service formed at the cash registers.[44] Plaintiff was again told to leave, and he again refused to leave.[45] Plaintiff then intentionally knocked a container of glass K-Chill gels from the counter to the ground, damaging the container and some of the glass K-Chill gels, before he exited the front door of the store.[46]

These facts and circumstances, which were within Defendant Dickerson's knowledge at the time of arrest and of which he had reasonably trustworthy information, would warrant a reasonably prudent person to believe that Plaintiff had remained unlawfully on the convenience store premises with the intent to interfere with employees or operations of the business and with the intent to damage, deface, or destroy property on the premises of the business. No reasonable jury could find otherwise. Indeed, Plaintiff does not dispute that he remained unlawfully on the convenience store premises with the intent to interfere with operations of the business and that,

---

[42] ECF No. 121, Ex. 1. No argument has been made that the convenience store manager was not a credible witness.
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*

while there, he intentionally damaged property.[47] Thus, probable cause existed to support an arrest for felony commercial obstruction.

Because probable cause existed to support an arrest for felony commercial obstruction, no reasonable jury could find that Defendant Dickerson knowingly or with reckless disregard for the truth made a false statement in the Probable Cause Affidavit or Warrantless Arrest Probable Cause Statement by classifying the arresting offense as a second-degree felony. In turn, no reasonable jury could find that, through this action, Defendant Dickerson set in motion a search that he knew or should have known was unconstitutional. Plaintiff has thus failed to establish that Defendant Dickerson violated Plaintiff's constitutional rights. As such, Defendant Dickerson is entitled to qualified immunity. The Court therefore agrees with the Magistrate Judge's recommendation that summary judgment is warranted in Defendant Dickerson's favor. Plaintiff's objection is overruled.

**B.    The DNA Extraction**

The Magistrate Judge's Report and Recommendation found that, because Plaintiff's Motion failed to address the relevant considerations set forth in *Maryland v. King*, Plaintiff failed to demonstrate he is entitled to judgment as a matter of law on his claim that his Fourth Amendment rights were violated by the DNA extraction.[48] The Court construes Plaintiff's first three objections to argue against this finding and will address each as they become relevant to the analysis.[49]

---

[47] *Id*. Ex. 3 at 21–23. While Plaintiff contends that the government could not prove beyond a reasonable doubt that he *remained* with the intent to damage, deface, or destroy property on the premises of the business because he knocked the container over as he was about to leave, probable cause does not require certitude or proof beyond a reasonable doubt.

[48] ECF No. 137 at 6.

[49] While the first objection contains some overlap with the fifth objection because Plaintiff contends in both that the Magistrate Judge failed to examine his excessive force claim, the Court will, for clarity, address the excessive force issue with respect to the fifth objection.

Plaintiff's first objection contends that the Magistrate Judge failed to resolve his claims against Sergeant Crowther for directing and executing the forcible DNA extraction, against Lieutenant Bigelow for ratifying the allegedly unconstitutional conduct, and against Washington County for maintaining a policy of non-verification. This may stem from a misunderstanding of the Report and Recommendation, as well as of the law.

Individual liability under § 1983, as Plaintiff has asserted against Sergeant Crowther, "must be based on [the defendant's] personal involvement in the alleged constitutional violation."[50] Supervisory liability under § 1983, as Plaintiff has asserted against Lieutenant Bigelow, "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution."[51] And a claim under § 1983 against a municipality, as Plaintiff asserts against Washington County, "cannot survive a determination that there has been no constitutional violation."[52] In short, all of these claims are predicated on a showing of a constitutional violation. And the Magistrate Judge found that Plaintiff failed to demonstrate as a matter of law that his Fourth Amendment rights were violated. As such, the Magistrate Judge did not fail to resolve Plaintiff's Motion as he contends, and this objection is overruled. Moreover, the Court has reviewed the issue de novo, and it agrees that Plaintiff has failed to establish as a matter of law a violation of his Fourth Amendment rights with respect to the DNA extraction.

---

[50] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (alterations in original).

[51] *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (alterations in original).

[52] *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1186 (10th Cir. 2020).

"[U]sing a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search" for purposes of the Fourth Amendment.[53] Whether a routine buccal swab of an arrestee is reasonable under the Fourth Amendment "requires a court to weigh 'the promotion of legitimate governmental interests' against 'the degree to which [the search] intrudes upon an individual's privacy.'"[54] With respect to governmental interests, the Supreme Court stated in *King* that "there can be little reason to question the legitimate interest of the government in knowing for an absolute certainty the identity of the person arrested, in knowing whether he is wanted elsewhere, and in ensuring his identification in the event he flees prosecution."[55] "To that end, courts have confirmed that the Fourth Amendment allows police to take certain routine 'administrative steps incident to arrest—*i.e.,* . . . book[ing], photograph[ing], and fingerprint[ing].'"[56] "DNA identification of arrestees . . . is no more than an extension of methods of identification long used in dealing with persons under arrest."[57] With respect to an individual's privacy, the Supreme Court stated that "[o]nce an individual has been arrested on probable cause for a dangerous offense that may require detention before trial, . . . his or her expectations of privacy and freedom from police scrutiny are reduced."[58] Thus, when an officer makes "an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the

---

[53] *Maryland v. King*, 569 U.S. 435, 446 (2013).
[54] *Id*. at 448 (alterations in original) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).
[55] *Id*. at 461 (citation modified).
[56] *Id*. (alterations in original) (quoting *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 58 (1991)).
[57] *Id*. (citation modified).
[58] *Id*. at 463.

arrestee's DNA is . . . a legitimate police booking procedure" and is reasonable under the Fourth Amendment.[59]

As a threshold matter, Plaintiff's second objection states that the Magistrate Judge's findings with respect to a motion for sanctions are irreconcilable with the Report and Recommendation. According to Plaintiff, the Magistrate Judge found that Utah Code Annotated § 76-10-2402(1)(a) was a class A misdemeanor at the time of Plaintiff's arrest and that formal charges were not filed against Plaintiff until two days later. To the extent Plaintiff's argument is not waived due to his first raising it in an Objection to the Report and Recommendation,[60] it is unavailing. Regardless of what may have been argued in the past, it was undisputed for the purposes of the present Motion that § 76-10-2402(1)(a) was a class A misdemeanor. And that formal charges were not filed against Plaintiff until two days following the DNA extraction is immaterial. Although Plaintiff contends that the governmental interests identified in *King* cannot exist when no formal charges have been filed, *King* does not support this argument. As stated in *King*, when an officer makes "an *arrest* supported by probable cause to hold for a serious offense and [] bring[s] the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is . . . a legitimate police booking procedure" and is reasonable under the Fourth Amendment.[61] Thus, it is whether the arrest is supported by probable cause to hold for a serious offense that is relevant, not with what offense the arrestee is ultimately charged. Plaintiff's second objection is overruled.

---

[59] *Id*. at 465–66.

[60] *See Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

[61] *King*, 569 U.S. at 465–66 (emphasis added).

Turning, then, to the application of the principles set forth in *King* to this case, Plaintiff's

third objection asserts that the Report and Recommendation misapplies *King* "by applying its

balancing test to a record that lacks the necessary predicate conditions."[62] In *King*, the Supreme

Court stated that, in the context of a routine buccal swab of an arrestee, "the necessary predicate

of a valid arrest for a serious offense is fundamental."[63] What offenses the Supreme Court meant

to include by using the phrase "serious offense" is perhaps arguable, but Plaintiff does not appear

to dispute that any felony would constitute a serious offense. Here, while the Probable Cause

Affidavit and the Warrantless Arrest Probable Cause Statement cited § 76-10-2402(1)(a), a

misdemeanor, commercial obstruction may also be charged as a second-degree felony,[64] and

those documents designated the offense as such.[65] And as the Court has discussed, probable

cause existed to support an arrest for felony commercial obstruction. The DNA collection was

then done during the booking process because the offense was, in the documents, designated as a

second-degree felony,[66] and Utah law requires DNA collection for individuals arrested for such

an offense.[67] Based upon these facts, a reasonable factfinder could find that a valid arrest for a

serious offense existed such that the buccal swab was reasonable under the Fourth Amendment.

The record, thus, does not lack the necessary predicate condition as Plaintiff contends, and his

third objection is overruled.

---

[62] ECF No. 138 at 4.

[63] *King*, 569 U.S. at 461.

[64] Utah Code Ann. § 76-10-2402(2)–(3) (2024).

[65] ECF No. 115, Exs. A–B.

[66] *Id*. ¶ 7.

[67] Utah Code Ann. § 53-10-403(1)(c) (2024); *id*. § 53-10-404(2)(a) (2024).

Ultimately, because a reasonable jury could find that a valid arrest for a serious offense existed such that the buccal swab was reasonable under the Fourth Amendment, Plaintiff is not entitled to summary judgment on his Fourth Amendment unreasonable search and seizure claim. The Court is thus in accord with the Magistrate Judge's recommendation that Plaintiff's Motion be denied.

## C.    Excessive Force

Plaintiff's Fifth Objection asserts that the Report and Recommendation fails to adjudicate an independent excessive force claim. Indeed, the Magistrate Judge noted that "[a]s the Court understands Plaintiff's Motion, it relates solely to the legality of the taking of his DNA sample. As such, the Court limits its discussion to that issue and does not address Plaintiff's excessive force claim."[68]

The Court has reviewed this issue de novo. Plaintiff brought the present Motion as a Motion for Partial Summary Judgment.[69] This Motion asks the Court to "[g]rant *partial* summary judgment in favor of Plaintiff on his Fourth Amendment claims arising from the warrantless, forcible DNA extraction[.]"[70] It appears that Plaintiff's Amended Complaint alleges his excessive force claim under the Fourteenth Amendment rather than the Fourth Amendment.[71] While an excessive force claim "can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment[,]"[72] Plaintiff has made no effort to argue whether his excessive force claim falls under the Fourteenth Amendment, as he has explicitly pleaded, or under the Fourth Amendment.

---

[68] ECF No. 137 at 1 n.1.
[69] *See* ECF No. 115.
[70] *Id*. at 15 (emphasis added).
[71] ECF No. 62 at 8.
[72] *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010).

Although the Court must liberally construe Plaintiff's filings as he is proceeding pro se, it will not act as Plaintiff's advocate.[73] "[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."[74] And the Court will not rewrite Plaintiff's Motion to grant him relief that he did not request. Plaintiff's Motion seeks only partial summary judgment on his Fourth Amendment claim. Thus, the Court concludes that Plaintiff's claim for excessive force is not properly before the Court on this Motion.

Even if it were—and assuming that Plaintiff meant to assert his claim for excessive force under the Fourth Amendment—Plaintiff has failed to meaningfully engage with the relevant analysis. In *Graham v. Connor*, the Supreme Court held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."[75] Application of the reasonableness standard requires consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[76] Plaintiff's argument centers around the notion that force used solely to obtain DNA without legal authority is unreasonable. As the Court has found, a reasonable jury could find that a valid arrest for a serious offense existed such that the buccal swab was reasonable under the Fourth Amendment. Thus, a reasonable jury could find that the

---

[73] *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).
[74] *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).
[75] 490 U.S. 386, 395 (1989) (emphasis in original).
[76] *Id*. at 396.

taking of the DNA was legally authorized. But, in any event, Plaintiff has not shown the Court why the facts concerning the severity of the crime at issue, whether he posed an immediate threat to the safety of the officers or others, and whether he was actively resisting render any force used unreasonable such that he is entitled to summary judgment on this claim. Again, while the Court liberally construes Plaintiff's filings, the Court "cannot supply facts or construct a viable legal theory on [his] behalf."[77] Thus, Plaintiff would have failed to establish that he is entitled to judgment as a matter of law on an excessive force claim under the Fourth Amendment.

In sum, Court overrules Plaintiff's fifth objection and, again, is in accord with the Magistrate Judge's recommendation that Plaintiff's Motion be denied.

### ORDER

Based on the foregoing, the Court OVERRULES Plaintiff Harris's Objection (ECF No. 138) and ADOPTS Judge Kohler's Report and Recommendation (ECF No. 137) as follows:

1.  Plaintiff's Partial Motion for Summary Judgment (ECF No. 115) is DENIED;

2.  Defendant Dickerson's Motion for Summary Judgment (ECF No. 122) is GRANTED.

DATED this 10th day of July 2026.

_____
Ann Marie McIff Allen
United States District Judge

---

[77] *Ruiz v. Gottlieb*, No. 26-4014-DDC-BGS, 2026 WL 444757, at *1 (D. Kan. Feb. 17, 2026).